(No. 3535— )

Fred E. Brackenbush, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed September 14, 1943.*

Samuel H. Shapiro, for claimant.

George F. Barrett, Attorney General; William L. Morgan, Assistant Attorney General, for respondent.

Chief Justice Damron delivered the opinion of the court:

The complaint in this case charges that Fred E. Brackenbush, claimant, while employed as a senior Stenographer at Manteno State Hospital, Manteno, Illinois, on the 28th day of August, 1939, was injured by reason of contracting typhoid fever from drinking water at said hospital; that medical, surgical and hospital treatment were partially furnished by the respondent and claimant's earnings during the year preceding the alleged injury amounted to $1,008; that his salary was paid to him during the time of his temporary disability. Claimant asks an award in the following amounts:

To doctor bills, estimated...................................... $150.00
To special diet, estimated...................................... 300.00
To medicine, etc., estimated................................... 50.00

and the further sum of $5,000 alleged to be due him under

the Workmen's Compensation Act of the State of Illinois.

The record consists of the complaint, stipulation, waiver of statement, brief and argument on behalf of claimant and respondent, report of Walter H. Baer, Managing Officer of said institution, dated September 13, 1940, hospital records and testimony of the claimant and Dr. O. H. Phipps for claimant taken on the 23rd day of April, 1943, at Kankakee, Illinois. No evidence was taken in behalf of respondent.

The stipulation discloses that the claimant was first employed at Manteno on January 5, 1931, as a senior stenographer, having resided at said institution continuously until on August 8, 1939, when he became ill and was confined to his apartment in said institution. That during the time he was ill wages in the sum of $441.67 were paid to him and on March 18, 1940, claimant returned to his work. The evidence shows that prior to August, 1939, the claimant had been complaining of not feeling well and was taking days off at his own discretion. He did not ask for any medical attention. Finally he went to bed in his apartment in the Administration Building and was seen by Dr. L. H. Cohen, Clinical Director, and Dr. Steinberg, of the medical staff. They recommended that he be hospitalized but claimant refused to go to the hospital but received treatment in his apartment by some of the staff members of the institution, among them Dr. C. L. Perkins, whose report is a part of this record.

Dr. Perkins reports that on or about September 14, he called on claimant and upon examination found that his symptoms were mild abdominal cramps and constipation, the abdomen was negative except that he had slight general tenderness. The patient perspired freely, was

not toxic but was definitely weak. He was exhausted. Patient had had two stool and urine specimens sent to the laboratory for typhoid culturing. Patient was put on general management, more stools were ordered, and in the following two weeks patient ran temperature. This ranged from 100-101 the first week. After that it was 100 at night (by mouth). After about two weeks patient gradually began to get out of bed under the doctor's direction. By this time two more stools had been taken. All stools had proven negative for typhoid bacillus. A blood count taken during this period showed white count of 15,000, red blood count was normal. Urinalysis was negative. Dr. Perkins further reports "Patient also complained of sticking pains in left chest along lower border about this time. Careful check of the lungs showed nothing (the patient had had a lung ray just prior to his illness which was essentially negative). On October 20 patient left his room for first time. After that I did not see patient." And further:

"The exact diagnosis of this illness is in some doubt. Typhoid fever seems to have been ruled out by a negative blood culture and four negative stools for typhoid cultures."

In connection with this report the laboratory examination of the claimant is as follows:

Card No. 288, 8-31-39, result negative.
Card No. 462, 9-5-39, result negative.
Card No. 633, 9-7-39, result negative.
Card No. 1144, 9-22-39, result negative.
Card No. 8681, 11-13-39, result negative.
Card No. 9530, 11-17-39, result negative.
Card No. 9831, 11-20-39, result negative.

We have searched this record diligently and failed to find any evidence supporting the claim that Brackenbush contracted typhoid fever from drinking water fur-

nished him by respondent during the course of his employment as alleged in said complaint. It is true claimant testified that he contracted typhoid fever in August, 1939, but that must be treated as a self-serving statement and conclusion of the witness. Dr. O. A. Phipps, called on behalf of claimant, testified that he treated the claimant on February 28, 1940. In response to a question he gave the following answer: "All physical findings are essentially negative except chest finding referable to heart. Chest, well developed, well nourished. Respiratory excretions slightly increased above average normal. Breath and voice sound normal, outlines of heart show an increase in dimensions as compared with dimensions of chest. Valvular sounds muffled, not sharp and distinct."

Counsel for claimant attempted to establish a basis for this claim by asking Dr. Phipps the following question:

"Q. From your examination of Fred Brackenbush on February 28, 1940, what are his permanent disabilities as a result of his having this typhoid fever, if you know?"

"A. At that time he had an impaired heart."

There was no legal basis for such a question for the reason that the witness had not testified that claimant had suffered from typhoid fever. Dr. Phipps was not the treating physician.

Under the facts in this case, we are of the opinion that the respondent is not liable to the claimant.

The general rule of law that the burden of proof is upon the plaintiff to prove his case by a preponderance or a greater weight of the evidence is applicable to claims under the Workmen's Compensation Act, and where claimant has not proven his claim no award can be made.

Award denied.